RICHARD C. WALN, appellant,

v.

JOHN MEIRS et al., respondents.

RICHARD C. WALN, administrator, appellant,

v.

JOHN MEIRS et al., respondents.

[Submitted April 22d, 1912.   Decided November 18th, 1912.]

The evidence examined in a suit brought by an administrator to set aside a transfer of personalty, made by his intestate, and found insufficient to warrant a decree for that purpose, and not to disclose a situation in which the transferee held a dominant position, with relation to the transferrer, so as to shift the burden of proof from the complainant to the defendant.

On appeal from two decrees of the court of chancery advised by Vice-Chancellor Walker, whose conclusions are as follows:

"WALKER, V. C.

This bill is filed by the heirs-at-law of the late Mrs. Sarah Waln Hendrickson, of Walnford, in the county of Monmouth. Mrs. Hendrickson died March 15th, 1907, intestate, aged ninety-one years.   She was a childless widow and left certain nephews and nieces as her heirs-at-law.   In her lifetime, and on December 22d, 1905, Mrs. Hendrickson made a deed for her plantation, manor house, mill and other buildings at Walnford, and for a house and lot in Crosswicks, New Jersey, to the defendant John Wilson, and the object of the complainants' suit is to set that deed aside, for the reasons, as alleged, that Mrs. Hendrickson for several years prior to her death was weak in mind and body and

unable to transact business; that Wilson took advantage of her condition and pretended to farm the real estate on shares and wrongfully appropriated to his own use large sums of money for which he was indebted to Mrs. Hendrickson; that she was not indebted to the defendant Mrs. Richardson, for whom provision was made in the deed; that defendant Mr. Meirs borrowed of Mrs. Hendrickson a large sum of money which he owes to her estate; that the defendants unlawfully entered into a conspiracy to cheat and defraud Mrs. Hendrickson of her property and to divide the proceeds among themselves; that the deed was procured to be made without consideration and by fraud and undue influence.

The deed in question contains the following recital:

"WHEREAS, the said party of the first part is indebted unto the said party of the second part in a sum in excess of eight thousand ($8,000) dollars for moneys heretofore loaned and advanced and for work and labor and other services done and performed by the said party of the second part for the said party of the first part, which said indebtedness and as well as the indebtedness of the said party of the first part to Ellen Richardson, now in the employ of the said party of the first part for work and labor done and performed by the said Ellen Richardson in such employment, the said party of the first part is desirous of paying, and not having the present means to do so, to that end and for that purpose has agreed with the said party of the second part to convey and assign to him the said party of the second part, all and singular, the real and personal property and estate of wheresoever kind and wheresoever situate, of her the said party of the first part, subject to the estate for life in the said real and personal property and estate hereinafter reserved and subject also to the promises, covenants and agreements hereinafter contained."

It then, in the granting part, contains the following:

"ALL, both of the said lands and premises and the said personal property and effects, subject, however, and the said party of the first part does hereby reserve to herself the use and occupation and enjoyment of all and singular the said lands and premises and personal property and effects and the rents, issues, profit and income derived and to be derived from the same in any manner whatsoever for and during the whole term of her natural life and subject also to the due and faithful performance of the several promises, covenants and agreements hereinafter mentioned and contained, to be done and performed by the said party of the second part. And the said party of the second part does hereby promise, covenant and agree to and with the said party of the first part, that if the

rents, issues and profits, derived from the said lands and premises and the income from the said personal property and effects, or the part or parts thereof that may be rented, farmed or otherwise used to produce profit, shall not produce sufficient income to maintain, support and otherwise provide for the comfort and necessities of the said party of the first part and pay all interest, taxes, insurance and other charges against the said land and premises and personal property and effects, that he, the said party of the second part will out of his own proper moneys, provide the maintenance and support for the party of the first part as above provided.

"And the said party of the second part does further covenant and agree to and with the said party of the first part, that he, the said party of the second part, will out of his own moneys, pay and satisfy the indebtedness of the said party of the first part to Ellen Richardson now in the employ of the party of the first part, for work and labor done and performed in such employment.

"And he the said party of the second part does further promise, covenant and agree to and with the said party of the first part that after the decease of the said party of the first part, he will provide all the moneys necessary to be expended to provide a funeral suitable to the situation and circumstances of the said party of the first part for the erection of a suitable monument over her grave. Interment to be in the burying grounds of the Orthodox Friends in Crosswicks, and to be beside or near the burial place of the late husband of the said party of the first part.

"And IT IS FURTHER AGREED, by and between the parties hereto, that the said party of the first part, shall retain the said party of the second part in her employ, he to do and perform the same duties and have the same management of the affairs of the said party of the first part as now; and during the lifetime of the said party of the first part the said party of the second part shall account to the said party of the first part for the income, rents, issues and profits that may come to his hands in his management of the affairs of the said party of the first part, but shall not be obliged to nor shall account to the personal representatives, if any there be appointed, after the death of the said party of the first part, but from so doing is hereby released and relieved.

"And the said party of the second part does further promise, covenant and agree that he will remain and continue in the employ and do and perform the same work and labor, duties and other services as are now done and performed by him during the whole term of the natural life of the said party of the first part, if he shall so long survive; and that he the said party of the second part will on demand of the said party of the first part account for and pay over any balance remaining in his hands of moneys belonging to the said party of the first part.

"AND IT IS UNDERSTOOD AND AGREED, that except the personal services herein provided for, all of the premises, covenants and agreements herein provided to be done, kept and performed by the said party of the second part shall extend to and bind and oblige the heirs, executors, administrators and assigns of the said party of the second part hereto."

This deed was acknowledged on the day it bears date before William Quicksall, a commissioner of deeds, and was duly recorded December 27th, 1905, in the Monmouth county clerk's office in book 764 of deeds (at *p. 295*), &c., in which county the Walnford property is situate; and in the Burlington county clerk's office on January 19th, 1906, in book 405 of deeds (at *p. 274*), &c., in which county the Crosswicks property is situate.

The defendant Wilson is an unmarried colored man, who lived with and worked for Mrs. Hendrickson, with some intervals, for a period of nearly forty years. The defendant Mrs. Richardson is an English woman, who resided with Mrs. Hendrickson in the capacity of housekeeper and companion for about fourteen years. The defendant John Meirs is an attorney-at-law of this state and is related to Mrs. Hendrickson, being her grandnephew. The complainants are contending for the recovery of an ancestral estate which has been in the family for some two hundred years, and which, by the deed in question, was conveyed to a colored servant, as they allege, without consideration and in fraud of their rights. Those rights, however, are to be tested and determined, not upon any sentimental ground, but by the fact whether or not Mrs. Hendrickson was indebted to Wilson and Mrs. Richardson; in other words, whether the conveyance was founded on sufficient consideration.

It may be appropriately observed that the property in question is not extremely valuable. True, it consists of a farm of one hundred and seventy acres, a mansion-house with outbuildings, and a grist mill. The testimony shows this property to be valued as low as $8,500 and as high as $10,000. For present purposes I will hold it to be worth $10,000. It is subject to a mortgage of $6,500. That leaves an equity of $3,500. Personal property conveyed by the deed, and which is the subject of another suit (one brought by Mrs. Hendrickson's administrator against the same defendants), which personal property was conveyed by the deed now being considered, is valued as high as $4,000. That makes $7,500 of value passing to Wilson. The actual consideration mentioned in the deed is an indebtedness of Mrs. Hendrickson to Wilson of $8,000 and her indebtedness to Mrs. Richardson in addition.

It will be seen, therefore, that the estate is not a particularly valuable one, at least not intrinsically, and that its value to the relatives of Mrs. Hendrickson consists principally in its being an ancestral estate. There would be less likelihood of Mrs. Hendrickson having conveyed this estate to Wilson and more likelihood of her having left him to his remedy at law if she had been upon terms of anything like intimacy with the relatives, who are the complainants in this cause, or if she held them in anything like the regard with which relatives usually and ordinarily hold each other. As a matter of fact, she was more or less, and I think I may say decidedly, estranged from these relatives by reason of litigation in the Waln family, which resulted adversely to her some twenty odd years prior to her death. These relatives were not frequent, some of them only occasional, visitors to her, while some of them visited her not at all. She lived in practical isolation from the world during the last years of her life, certainly since a severe illness in 1899, through which Mrs. Richardson nursed her, and during which time, as at all other times, John Wilson was her devoted servant.

The complainants assert, and adduced testimony tending to show, that the once proud, strong-willed and imperious Mrs. Hendrickson, at the time she made the deed in question, through weakness of mind and body, lacked sufficient capacity to understand the transaction in which she was engaged, and that she was fraudulently imposed upon, unduly influenced, and that, consequently, the deed is void. Upon this issue my judgment is that the proof is the other way, and that the witnesses sworn for the defence have clearly established that Mrs. Hendrickson at the time of the making of the conveyance possessed abundant capacity to understand the transaction in which she was engaged; in fact, that she did understand it; and that, volitionally, and without imposition, fraud or undue influence, she made the conveyance under review as her voluntary act and deed. I do not pretend to say that at this time she possessed the same vigor of mind and body that she enjoyed in earlier life. She rambled at times in her conversation, was more or less repetitional, and perhaps was the occasional victim of delusion—though on the question of not recognizing certain relatives and making rather incon-

gruous remarks of and to them I think she acted more with design than by mistake. Some of the things that she said and did, especially some of the things which she wrote, appeared to be somewhat irrational, yet they are to be explained I think upon the theory that she took herself very seriously and missed no opportunity of exploiting herself in a sort of mock heroic way, attributing to herself more intellect and more importance than in reality she possessed.

The wills and deeds of innumerable persons against whom accusations of mental aberration have been leveled and proved to exist in far greater degree than can be argued to have existed in the case of Mrs. Hendrickson, have been upheld, the supreme test being the capacity of the devisor or grantor at the time the conveyance was made.

Let us look now to the execution of the particular deed in question and examine it in the light of the law on the subject.

Dr. Allen, who became Mrs. Hendrickson's physician during her illness of 1899, and continued as such until her death, March 15th, 1907, said he treated her for erysipelas in November and December, 1905, and did not notice any change in her mental condition; that in December, 1905, it was good, fair for her age, and that she was not a person easily influenced. She then told him she was going to deed her property to Wilson. The deed was made December 22d of that year. She did not die of senile dementia. Ordinarily, a physician treating a patient is in a better position to know of that patient's condition, as to integrity or infirmity of mind and body than anyone else, and I see no reason to think otherwise in the case in hand. And the doctor, as is usual, has no interest in this controversy whatever.

The deed in question was prepared by the defendant John Meirs at the request and by the direction of Mrs. Hendrickson. The terms of the deed were arranged at an interview between Mrs. Hendrickson and Mr. Meirs, and a tentative draft of the instrument was submitted to Mrs. Hendrickson and approved by her. Mr. Meirs then wrote the document and Mrs. Hendrickson had it in her possession for several days before its execution and read it over several times and was thoroughly familiar with its contents.

William Quicksall, assessor of the township and the commissioner who took her acknowledgment, says that she recognized him when he went to the house on that occasion as well as the previous spring when he went to make the assessment; that he always considered her pretty strong and not easily influenced. That was his judgment from his dealings with her; that she talked entirely rationally; made direct and proper answers to every remark he made, and led the conversation; that she may have rambled a little, but certainly knew what she was talking about that day.

In my judgment, it is extremely significant that the deed from Mrs. Hendrickson to Wilson was speedily recorded after its execution. It was made on December 22d, 1905, and recorded five days afterwards in the Monmouth county clerk's office, in which county the bulk of her property is situate, and between three and four weeks thereafter in the Burlington county clerk's office, in which county the remaining portion of the property lies. Mrs. Hendrickson survived more than a year after this transfer and its recording, during which time she, or another on her behalf acting as next friend, could have attacked the conveyance, with the benefit of her examination as a witness, or of an examination into her sanity on notice to her. I do not recall whether the testimony discloses that the complainants, or any of those in interest with them, actually knew of the conveyance; but, beyond any doubt, they did. The recording of this extraordinary deed at Freehold and Mount Holly must have caused comment which reached and spread over the country side at Walnford. Whether so or not the defendants proceeded in the open and practically published the transaction to the world. I am unwilling to believe that they did it upon the theory that they would take the risk that a nefarious and fraudulent transaction would not be discovered in the lifetime of the victim, so that they might have the advantage in the defence of their ill-gotten gains after her death, by asserting that they concealed nothing, but, on the contrary, laid bare the transaction, thus making discovery practically certain at a time when it undoubtedly would have meant ruin to their plans. It is significant; not of the dishonesty, but of the honesty of the transaction, that this conveyance should have been forthwith recorded.

instead of being withheld until after the death of the grantor, as is usual in cases of fraud such as is here imputed to the defendants.

Let me now briefly advert to the question as to whether or not Mrs. Hendrickson was indebted to Wilson. He had, as already remarked, worked for her for many years, and he had, in my judgment, made her his banker and the custodian of his money during practically the entire time of his employment by her. There have been other instances of the same kind, although they are rare. In her early days, when she was entertaining rather lavishly and people of affluence visited her quite frequently, Wilson was the recipient of liberal tips which he turned over to Mrs. Hendrickson to keep for him as well as leaving his wages with her. Of course, he had his clothes and had spending money, and doubtless he had more money than he thinks he had or states, and doubtless left less money with Mrs. Hendrickson than he thinks he did or states; but, out of all the testimony on this subject, I am persuaded that Mrs. Hendrickson was heavily indebted to Wilson, and that she took him to Camden to the office of the late Attorney-General Grey, who represented her, and that in Mr. Grey's office an accounting was arrived at between Mrs. Hendrickson and Wilson, as a result of which Mr. Grey drew and Mrs. Hendrickson signed a note of hand to John Wilson, in which she promised to pay him the sum of $6,000, which was money she owed him. This was in December, 1902.

As to Mrs. Richardson, Mrs. Hendrickson's housekeeper and companion, the testimony, to my mind, shows that Mrs. Hendrickson was indebted to her, and that she therefore made it a condition in the deed that John Wilson should pay her out of the estate granted. Mrs. Richardson is quite a remarkable woman. Born and reared in England she afterwards traveled about the world occupying various positions and had a remarkable, not to say romantic, career. My impression of her is that she is entirely honorable and entirely truthful. She is now an old woman. It was suggested, though not pointedly charged, that she was unduly intimate with Wilson. I acquit her of that charge. She was friendly with him, more so doubtless than most women are with colored men, but that is to be accounted for as it is notorious

that there is little or no prejudice against colored people in England, whence Mrs. Richardson came.

The complainants insist that as Wilson and Mrs. Richardson were Mrs. Hendrickson's servants and Meirs, her attorney (the latter of whom they claim has received and is to receive portions of the estate), and occupied a dominant position toward her, that, therefore, the deed is not *prima facie* evidence in favor of its validity, but, on the contrary, that the burden of proof is cast upon the defendants to show that the transaction was founded upon sufficient consideration, is untainted and entirely fair.

I will grant that the defendants occupy this position of disadvantage in this case; and I hold, upon this score, that they have discharged that burden. The deed, in terms certainly indicates that the grantor, Mrs. Hendrickson, took the precautions in her own interest, which are so frequently wanting in voluntary conveyances which are aside in behalf of heirs and devisees, namely, she reserved a life estate, and imposed conditions upon the grantee for her support and the payment of her debts. The conveyance was drawn by an attorney of her choice and selection and from him she had competent, independent legal advice as to the nature of the transaction and her rights thereunder.

This case was tried at great length, the witnesses were numerous and their testimony voluminous. It was argued on both sides with exhaustiveness and ability rarely equaled. I listened with undivided attention through the many days of the trial, observed critically the character of the witnesses and their manner of testifying, and have, since the conclusion of the evidence and the arguments, reviewed the evidence and the exhaustive briefs submitted by counsel, and upon most careful consideration have reached the conclusion that the defendants have established the title of Wilson to the land in question (for that only is drawn in question in this suit), and therefore the complainants' bill must be dismissed, with costs.

WALKER, V. C.

This bill is filed by the administrator of the late Mrs. Sarah Waln Hendrickson, of Walnford, in the county of Monmouth, who died intestate on March 15th, 1907, aged ninety-one years.

She left her surviving certain nephews and nieces as her next of kin who would inherit any personal property of which she died possessed. These next of kin are also her heirs-at-law. In another suit commenced three days before the bill in this cause was filed, the complainant, herein as an heir-at-law of Mrs. Hendrickson, filed a bill on behalf of himself and such other of her heirs-at-law as might become parties and contribute to the expenses of that suit. In my conclusions in that cause, filed simultaneously with this memorandum, I deal with the issues, which are identical in both suits. The deed in question, which was made December 22d, 1905, by Mrs. Hendrickson to the defendant Wilson, conveyed both real and personal property. The other suit was to recover the real estate from the grantee on the ground of want of capacity of the grantor, and fraud and undue influence inducing the conveyance, and this suit is to set aside the same conveyance as to the personal property. The only difference between this suit and the other one lies in a question of evidence. It is here objected that the testimony of the defendants which was received in the other cause is not evidence for the defendants in this suit, because the complainant here sues in a representative capacity. The cases were tried together by consent and it was agreed by counsel that the testimony of the defendants should be taken subject to being excluded in this case if I should be of opinion that it was not admissible under the statute. At the conclusion of the complainant's case, the defendants moved to dismiss the bill as to the defendant Meirs, asserting that nothing had been proved against him and that such a decree should be made in order that the other defendants could have the benefit of his testimony. I cannot say that nothing was proved against Mr. Meirs at the conclusion of the complainant's case. When the complainant rested there was testimony tending to show and from which it might be inferred that the three defendants had, pursuant to a conspiracy, cozened Mrs. Hendrickson out of her property, and, while Mr. Meirs might not have been the recipient of any but a small portion for value, as the defendants contend, nevertheless, if a conspiracy were established, he would have to account to the complainant as administrator along with the other defendants, and they would all be jointly and severally liable.

32

Therefore, in my judgment, the defendants' motion should be denied, and the testimony of the three defendants, which was received in the other case, must be rejected in this case.

Now, when the defendants rested and the whole case was presented in the cause concerning the land, the controversy wore quite a different aspect, and that which unanswered and unexplained appeared, at least with some degree of probative force, to indicate guilt on the part of the defendants, was explained, and it was made affirmatively to appear that Mrs. Hendrickson understood the transaction in which she was engaged, and that the deed in question was made by her without any undue influence, fraud or imposition, and as her voluntary act and deed. This, to my mind, abundantly appears in the other case in which the defendants are given the benefit of their own testimony, and I incline to the opinion that in this case even without their testimony the same result is to be reached.

It would be an anomaly in the law if in two cases, one concerning the real estate and the other the personal property of the deceased, between the same identical parties in interest and depending upon the same identical facts, a diametrically opposite result should be reached as to each class of property; but this would be so, if, in excluding the evidence of the defendants in this case as required by the statute, the other evidence was insufficient to affirmatively establish the defence, for the burden of proof in this case, as in the other, is cast upon the defendants. Now, without deciding whether or not the testimony, other than that of the defendants, in this case has affirmatively established the title of Wilson to the personal property, the decision of the other case should be given controlling effect in this case under the doctrine of *res judicata.*

The complainant, as administrator, represents the real parties to this suit, who are the next of kin (and creditors, if any) of the deceased. They are the real parties in interest, and the next of kin in this suit are bound by the decision of the other suit in which their interests as heirs-at-law were tried and determined as against the same defendants upon identically the same issues. And it makes no difference that the property which is the subject of the separate suits is different. See the case of *City of Paterson*

v. *Baker, 51 N. J. Eq. (6 Dick.) 49.* See, also, *In re Walsh,* post p. 565; *Seeley* v. *Adams, 76 Atl. Rep. 462.*

Suppose the suit of the heirs had been tried and determined with a decree dismissing the bill already entered when this suit commenced. Certainly, the defendants would have a perfect defence in the record of the former suit, which could be interposed by way of plea in bar. If, on the contrary, the administrator's suit had been first tried and determined and a decree in favor of the defendants were already entered, a similar plea in the suit of the heirs for the real estate setting up the defeat of the same heirs as next of kin in an attempt, through their representative, the administrator, to recover the personal property, would be a perfect bar. I repeat, no such anomaly and injustice should be permitted as two different results in these two suits simply because they are tried simultaneously. I think it makes no difference that the bill for the heirs was filed prior to the bill by the administrator. It is the priority of decree settling the issues in the one case which would be efficacious in the other.

Let the decree be entered in the other suit first, and then let the decree in this case contain a recital of the other suit and the decree therein and that the court is of opinion that the matters there adjudicated are dispositive of the issue in this case *res judicata.* The bill in this case will also be dismissed, with costs."

*Messrs. Wescott & Wescott,* for the appellants.

*Mr. Thomas E. French* and *Mr. Lewis Starr,* for the respondents.

The opinion of the court was delivered by

VOORHEES, J.

These appeals are from two decrees, dismissing two bills of complaint. One of the bills was filed by Richard C. Waln, one of the heirs-at-law of Sarah W. Hendrickson, deceased, on his own behalf, and in behalf of such other heirs-at-law of said Sarah W. Hendrickson as should come in and become parties thereto.

The other bill was filed by the said Richard C. Waln, as administrator of said Sarah W. Hendrickson, deceased. They each attack a deed dated December 22d, 1905, made by Mrs. Hendrickson to the defendant Wilson transferring both real estate and personal property, and to have this instrument set aside and declared void. The first bill by the heirs-at-law is directed against that part of the deed that conveys a tract of land known as the Walnford Farm. The second bill filed by the administrator is to set aside the same deed so far as it conveys personal property. By stipulation entered into between the parties the two suits were tried together, and by consent, the testimony in the one case is to be used in the other case, subject, however, to its exclusion in the administrator's case, if inadmissible by reason of the statute. The facts have been carefully set out in the opinions filed by the learned vice-chancellor.

In the bill brought by the heirs-at-law to avoid the transfer of the real estate, we think the decree should be affirmed, for the reasons stated by the vice-chancellor in his opinion.

If the learned vice-chancellor, however, meant to express it as his opinion that the defendants, Wilson and Richardson, occupied dominant positions towards Mrs. Hendrickson, this court does not wish to be understood as agreeing to that conclusion. We are of opinion that the testimony shows that the defendants have borne the burden which the law has placed upon them as to the *bona fides* of the transaction. But we do not agree that Mrs. Hendrickson held a servient position as to them. Wilson was a mere servant in the family and had occupied that position for forty years, and in it had considered whatever he made the property of his mistress.

It clearly appears that the grantor had independent advice of her own choosing, and that the bargain evidenced by the deed was not only not improvident on her part, but a most favorable one for her. The testimony shows that Mrs. Hendrickson herself said it was a hard bargain for Wilson, and that he should be made fully acquainted with its nature before entering into it. He was apprised of it and acknowledged that its terms did bear heavily upon him, but that he would not think of leaving the old lady;

but expected to take care of her in any event. This view adds strength to the position taken for the affirmance.

In the administrator's case, we agree with the result reached by the learned vice-chancellor, but by a different course of reasoning.

The learned vice-chancellor, we think, correctly ruled that the testimony of the three defendants in this suit should be rejected, for the reason that the complainant was suing in a representative capacity.

We think it unnecessary to apply in this suit the doctrine of *res judicata,* if it arise from the decree in the real estate case. Although it may seem to be illogical that any different result could be reached, as to the *status* of the same instrument, merely by its being subjected to different suits, yet that might have been the result if there had been separate conveyances, with different evidence in each suit.

The opinion goes upon the idea that the administrator represents the next of kin, who are said to be the real parties in interest to this suit, and that the next of kin are bound by the decision in the real estate suit, in which their interest as heirs-at-law had been determined upon identically the same issue. All the cases hold that litigation invoked to this effect must have been between the identical parties or their privies in law or estate.

*Bigelow Estoppel (5th ed.) 146,* says:

> "The relationship of privity does not exist at common law between administrator or executor, and heir or devisee, so as to make a judgment against the decedent's representative binding upon the lands of the heir or devisee,"

and see opinion of Marshall, C. J., in *Garnett* v. *Macon, 2 Brock. 185; 6 Call. 308,* reported as No. 5245 in *10 Fed. Cas.*

The vice-chancellor apparently anticipated difficulty which possibly might arise if the decree in favor of the administrator should be entered first. He was careful to order that the decree in the suit brought by the heirs-at-law should first be entered, and that the decree in this suit should contain a recital of the former decree. If there be a lack of mutuality in the estoppel, the order of entry would not obviate the difficulty.

Though the testimony of the defendants must be rejected, yet there are other proofs ample to show that Mrs. Hendrickson was, at the time, of sufficient mentality; that she had long before become estranged from her family; that she was indebted to Wilson, who held her note; that she had announced her intention to make the transfers to him, in order that she might provide for him for all his days, and her subsequent statement to another witness that she had "fixed everything over to him so that everything shall be his," and that she had provided for her future support and maintenance with considerable forethought and prudence by the instrument sought to be annulled.

In our view, the complainant's evidence fails to disclose in this case that Mrs. Hendrickson was dominated by the defendants, and therefore the burden has not shifted. The complainant thus stands upon the ground of no greater vantage than would the grantor if she were making the attack.

Under such circumstances, even if a gift, it would have been irrevocable. *James* v. *Aller, 68 N. J. Eq. (2 Robb.) 666.* A *fortiori* if upon sufficient consideration.

Since there is abundant evidence to justify an affirmance of the decree in the administrator's suit, without regard to the effect of the adjudication in the other case, a point which we do not decide, we base our decree upon the force of such evidence.

The decree will be affirmed.

No. 54—

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, TREACY—13.

*For reversal*—None.

No. 55—

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, TREACY—13.

*For reversal*—None.